JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
MICHELINE De BERARDINE

## DEFENDANTS
JAMIE B. WEINER and DELPHI PROPERTY GROUP, LLC

**(b)** County of Residence of First Listed Plaintiff   Fairfield, Connecticut
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Grace H. Flanagan, Esq., Zarwin, Baum
1818 Market St., 13th Fl., Phila., PA 19103 (215) 569-2800

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C 1332

Brief description of cause: Breach of contract, fiduciary duty and fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
02/23/2016

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Micheline De Berardine | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Jamie B. Weiner and Delphi Property | : | |
| Group, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.                                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (X)

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court.  (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| February 22, 2016 | Grace H. Flanagan, Esq. | Plaintiff, Micheline DeBerardine |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-2800 | 215-569-1606 | ghflanagan@zarwin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Micheline De Berardine, 41 Pheasant Hill Road, Weston, Connecticut, 06883

Jamie B. Weiner, 1623 Ridge Avenue, Unit 2, Philadelphia, PA 19130

Address of Defendant: Delphi Property Group, LLC, 718 Chestnut Street, Philadelphia, PA 19106

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
                          Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: Feb.22,2016   _____   20f265/PA
                     Attorney-at-Law              Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELINE De BERARDINE
41 Pheasant Hill Road
Weston, Connecticut 06883

*Plaintiff*

vs.

JAMIE B. WEINER
1623 Ridge Avenue, Unit 2
Philadelphia, Pennsylvania 19130

and

DELPHI PROPERTY GROUP, LLC
718 Chestnut Street
Philadelphia, Pennsylvania 19106

*Defendants.*

Civil Action No. _____

## COMPLAINT

Plaintiff, Micheline De Berardine ("De Berardine" or "Plaintiff"), by her undersigned attorneys, files this Complaint against defendants, Jamie B. Weiner ("Weiner") and Delphi Property Group, LLC ("Delphi"; collectively, "Defendants"), based on Defendants' fraud, breach of fiduciary duties and, in the alternative, breach of commission agreement, in connection with their representation of Plaintiff in the purchase of real property. In support of her claims, she avers as follows:

## I. THE PARTIES

1.     Plaintiff, Micheline De Berardine is a citizen of Connecticut, residing at 41 Pheasant Hill Road, Weston, Connecticut 06883.

2.     Defendant Jamie B. Weiner is, upon information and belief, a licensed commercial real estate broker and a citizen of Pennsylvania, residing at 1623 Ridge Avenue, Unit 2, Philadelphia, PA 19130.

3.     Defendant Delphi is a Pennsylvania limited liability company with an office located at 718 Chestnut Street, Philadelphia, PA 19106. Upon information and belief, its sole member, Weiner, is a citizen of Pennsylvania.

4.     At all material times and upon information and belief, Weiner acted in his capacity as the sole member of Delphi and its commercial real estate broker.

## II.  VENUE AND JURISDICTION

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because it is the judicial district where defendants reside and where the cause of action arose.

## III.  BACKGROUND FACTS

7.     In the fall of 2015, Plaintiff, working with her son, James De Berardine ("James"; together with De Berardine, "De Berardines"), began searching for a commercial property in Center City Philadelphia.

8.     In or about September 2015, Weiner, in his capacity as Delphi's broker, met James and began working with him and De Berardine to assist in their search. De Berardines had never purchased property in Pennsylvania and relied heavily on Weiner's expertise as a licensed commercial broker.

2

9.      In September 2015, Weiner introduced the De Berardines to the real property located at 1209 Vine Street, Philadelphia ("Property"), a five-story building with offices, which was listed on the market for a purchase price of $5.5 million and suited the De Berardines' targeted search.

10.      At the time, Telwell, Inc. ("Telwell") owned the Property.

11.      In September 2015, De Berardine, through Weiner, made a series of offers by way of term sheets to Telwell, starting at $3.25 million.

12.      On November 2, 2015, Weiner called James to relay a $6 million offer from Telwell, told James that the offer was good for that day only, and that no changes could be made to the form of offer approved by Telwell.

13.      Pursuant to the proposed "take it or leave it" agreement of sale, Weiner's commission was 3% of the sale price, or $180,000.

14.      James told Weiner that he was extremely disappointed that the price had escalated so drastically and that Weiner had not properly represented the De Berardines throughout the negotiations.

15.      Weiner responded, saying that the owners are "insane" and that the De Berardines "will just have to walk away."

16.      In response, James said that the De Berardines were still considering the offer, but, in order to accept the $6 million offer, Weiner's brokerage fee would need to be reduced.

17.      Weiner responded, saying that he was sorry the price got so high, but not to worry, he would cap his brokerage commission at $112,000 and give the remaining balance he would have received to De Berardine at closing.

3

18.     James told Weiner he would consider the offer, and, after conferring with De Berardine, offered that Weiner take only $90,000.

19.     Weiner said in response, "I will cap my commission at $100,000."

20.     James conferred with De Berardine again, and then informed Weiner that De Berardines were accepting Weiner's offer of a capped fee at $100,000, that "every penny counts", thanked Weiner for "being reasonable" and informed Weiner that if he was not "stepping up", the deal would not get done.

21.     Weiner entered this commission agreement with De Berardine without ensuring that the terms were memorialized in writing.

22.     Within approximately one hour of this fee-cap agreement between De Berardine and Weiner reached on the telephone, and in material reliance thereon, De Berardine signed the final agreement of sale, which included a purchase price of $6 million. A true and correct copy of the final signed agreement of sale, dated as of November 1, 2015, is attached hereto as Exhibit "A" ("Agreement of Sale").

23.     De Berardine entered the Agreement of Sale based on Weiner's representation that he would remit $80,000 of his portion of the commission fee to De Berardine at closing.

24.     On November 2nd, Weiner delivered the Agreement of Sale signed by De Berardine to Telwell's president, Matthew Crane ("Crane") – without first running it by De Berardine's attorneys – and Crane signed the agreement on behalf of Telwell.

25.     At this time, Weiner informed Crane that he had gotten "beat up on the commission."

4

26.     On December 11, 2015, when a draft settlement sheet for closing was circulated, and when the due diligence period was still open, De Berardine emailed Weiner and told him that the settlement sheet needed to be revised to reflect their agreement regarding Weiner's commission. A true and correct copy of the email is attached hereto as Exhibit "B".

27.     Weiner ignored this email.

28.     In January 2016, as the closing approached, James repeatedly called Weiner to clarify how the settlement sheet should be prepared to reflect Weiner's commission and how Weiner's brokerage payment was to be funded.

29.     Weiner ignored these repeated calls.

30.     Not until January 26, 2016, a few days before the scheduled closing date of January 29, 2016 and after the due diligence period had ended, did Weiner finally respond to the De Berardines, stating, *for the first time*, that he was not going to abide by his agreement to cap his brokerage fee and insisting that there was no "formal and signed documentation" that supported same.

31.     Defendants' conduct was done willfully, wantonly and in bad faith, evidenced by their deliberate avoidance of memorializing the terms of the commission fee agreement in writing and their calculated decision to avoid responding to Plaintiff's request for clarification on the broker fee and related closing credit until after the due diligence period had expired.

32.     On January 29, 2016, De Berardine, as the manager of Meritis Group LLC, purchased the Property from Telwell at the purchase price of $6 million.

33.     Weiner took from the proceeds of the sale the full $180,000 commission, without paying De Berardine at closing, in deliberate violation of the verbal agreement and/or representation he had made to De Berardine to induce her to enter the Agreement of Sale and purchase the Property.

## COUNT I - BREACH OF FIDUCIARY DUTIES

34.     Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

35.     As Plaintiff's broker, Defendants owed a common law and statutory fiduciary duty to fully, accurately and clearly convey the terms of their representation of De Berardine and related closing credit in the purchase of the Property.

36.     Plaintiff, as a non-resident who was unfamiliar with Philadelphia, reposed special confidence in Defendants, and such confidence was based upon her dependence and/or justifiable trust and reliance upon Defendants to discharge their duties to her as a commercial brokerage and broker.

37.     Defendants failed in their fiduciary duty owed to Plaintiff by a) failing to abide by their commission agreement with Plaintiff, b) failing to clearly and in writing articulate the terms of the commission agreement to Plaintiff, c) misrepresenting the terms of Defendants' commission and the related closing credit they were to give Plaintiff and d) repeatedly failing to respond to the De Berardines' request for confirmation of same until after the expiration of the Agreement of Sale's due diligence period.

38.   Had Defendants not committed these breaches of fiduciary duty, De Berardine would not have entered the Agreement of Sale and/or would not have closed on the sale of the Property under the terms of the Agreement of Sale.

39.   Bound by the Agreement of Sale, based on Defendants' knowing, false misrepresentations and/or nondisclosures, De Berardine was faced with defaulting under the terms of the Agreement of Sale – and losing her $300,000 deposit – or going forward with the sale.

40.   Defendants breached their fiduciary duty to Plaintiff as set forth above, causing her damages in the amount of $80,000, plus punitive damages and costs.

41.   Defendants' breaches were willful, wanton and done in bad faith.


## COUNT II - FRAUD

42.   Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

43.   As set forth hereinabove, Defendants misrepresented and/or failed to disclose material information relating to Defendants' brokerage fee and Plaintiff's related closing credit.

44.   Based on these material misrepresentations and/or nondisclosures, on which Plaintiff reasonably relied, De Berardine entered the November 2nd agreement for the purchase of the Property and was obliged to close on the sale of the Property at an increased price of $80,000.

45.   At all times, Defendants made these statements to Plaintiff knowing them to be false, and/or withholding material information knowingly, in order to induce

Plaintiff to enter the Agreement of Sale and purchase the Property, and, in turn, to secure an inflated brokerage fee for themselves.

46.    As a consequence of the foregoing, Plaintiff has been injured in the amount of $80,000 plus punitive damages and costs.

47.    Defendants' fraudulent conduct was willful, wanton and done in bad faith.

## COUNT III – BREACH OF CONTRACT

48.    Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

49.    On November 2nd, Defendants entered a verbal agreement with De Berardine, after a series of well considered negotiations, whereby Defendants agreed to cap their brokerage commission at $100,000 and give the remaining balance of $80,000 to Plaintiff at closing toward the purchase of the Property.

50.    Defendants failed to abide by the agreement and instead insisted upon the full $180,000 to be kept for themselves, without paying De Berardine.

51.    As a consequence of the foregoing, Plaintiff has suffered damages in the amount of $80,000 plus costs.

## IV. CONCLUSION

**WHEREFORE**, plaintiff, Micheline De Berardine, demands the following relief:

(a)    judgment in her favor and against all Defendants as set forth on all Counts of her Complaint;

(b)     compensatory damages from all Defendants, jointly and severally, in an amount to be determined at trial, in excess of $75,000;

(c)     punitive damages from all Defendants, jointly and severally;  and

(d)     such other relief as the Court deems just and proper.

ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.

By:

ANTHONY R. TWARDOWSKI
GRACE H. FLANAGAN
1818 Market Street
13th Floor
Philadelphia, PA 19103
Tel.   215-569-2800
Fax   267-765-9632
Attorneys for Plaintiff

Dated: February 22, 2016

9

# EXHIBIT "A"

# AGREEMENT FOR PURCHASE AND SALE OF REAL ESTATE
## 1209-15 Vine Street, Philadelphia, Pennsylvania 19107-1111

**THIS AGREEMENT**, made this _____ day of _November_ A.D. 2015, by and between Telwell, Inc., a Pennsylvania Corporation with a mailing address of P.O. Box 42859, Philadelphia, Pennsylvania 19101 parties of the first part (hereinafter called "**Seller**") and Micheline De Berardine, her assignee or nominee, with an address of 41 Pheasant Hill Road, Weston, Connecticut 06883 party of the second part, (hereinafter called "**Buyer**").

## BACKGROUND

A.   Seller is the owner of **1209-15 Vine Street, Philadelphia, PA** as more particularly described in Exhibit A hereto, together with all buildings, structures and other improvements constructed thereon and all easements, rights and privileges appurtenant thereto (collectively, the "Premises" or "Property").

B.   Seller is prepared to sell, transfer and convey said Premises to Buyer, which is prepared to purchase and accept the same from Seller, all for the purchase price and on the other terms and conditions hereinafter set forth.

C.   It is contemplated within this Agreement that Buyer shall use the Property as a commercial mixed use property.

## TERMS AND CONDITIONS

In consideration of the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the parties hereto agree:

1.   Sale and Purchase.   Seller hereby agrees to sell, transfer and convey said Premises to Buyer, its assignee or nominee, and Buyer hereby agrees to purchase and accept the Premises from Seller, in each case for the purchase price and on and subject to the other terms and conditions set forth in this Agreement.

2.   Purchase Price.   The aggregate purchase price for said Premises (the "Purchase Price") shall be for the sum of Four Million Seven Hundred Thousand and 00/100 Dollars ($4,700,000.00), which shall be paid to the Seller by the Buyer as follows:

Cash or certified check at the signing of this Agreement:     **$200,000.00**

Additional Deposit (in accordance with Section 6.3)     **$100,000.00**

Cash at settlement by wire transfer:     **$4,400,000.00**

TOTAL:     **$4,700,000.00**

3.    Settlement.  Settlement may be on or before thirty (30) days following the expiration of the Due Diligence Period (as defined in Section 6), (the "Closing Date").

4. Deposits.  Buyer shall place all deposits in an interest bearing escrow account to be held by Escrow Agent, Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., with interest to accrue to the benefit of the Buyer..

5. Title.  The Premises shall be conveyed by Special Warranty Deed free and clear of all liens and encumbrances.

5.1. Objections to Title.    Buyer shall notify Seller, in writing, of any objections to the title, within thirty (30) days following the date of this Agreement (the "Title Review Period").  In the event Buyer has so timely notified Seller then all deposits made under this Agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto, unless Seller elects to use reasonable efforts to cause the title to be delivered in accordance with the provisions of this Agreement. In the latter event, Seller shall give written notice thereof to Buyer and thereupon the time for performance may be extended for a period of thirty (30) days in accordance with Section 6.1.

6.    Due Diligence Period.  The Buyer shall have sixty (60) days due diligence period commencing on the Agreement Date (being the date on which the last party to this Agreement executed this Agreement and the fully executed Agreement has been returned to the Purchaser hereinafter referred to as the "Due Diligence Period") to, at its expense, inspect and/or cause one (1) or more surveyors, attorneys, engineers, auditors, architects, environmental consultants and/or other experts of the Buyer's choice to inspect, examine, survey, appraise and otherwise do that which in the opinion of the Buyer is necessary to determine the boundaries, acreage and condition of the Premises, the suitability of the Premises for Buyer's purposes, and all other aspects of the Premises whatsoever.  On the Agreement Date, the Seller shall furnish or make available to Buyer information concerning the Premises as may be reasonably requested by the Buyer and Seller can reasonably deliver, including but not limited to, copies of all surveys, leases, rent receipts, permits, certificates of occupancy, any governmental notices relating to the Premises and other such items relative to the Premises.  At the end of the Due Diligence Period, Buyer may terminate this agreement without penalty and any deposits made by Buyer shall be refunded.

6.1    Intentionally Omitted.

6.2    Early Termination.  In the event that the Buyer discovers that the Property is not satisfactory, or for no reason at all, Buyer shall notify Seller prior to the expiration of the Due Diligence Period of their intent to terminate the Agreement, in which case the Agreement shall be declared null and void and all deposit monies with interest returned to Buyer.

6.3    Additional Deposits.  Buyer shall deposit an additional amount of

one hundred thousand dollars ($100,000) via cash or certified check sixty (60) days after the signing of this Agreement.

      7.    Covenants, Representations and Warranties of Seller.   Seller covenants, represents and warrants to Buyer as follows:

      7.1.    Authority.   Seller owns the Project in fee simple and has full power and authority to enter into, and to perform Seller's obligations under, this Agreement.   Seller has taken all corporate action necessary to approve and effect the transactions contemplated hereby and authorize execution of this Agreement by the individuals who are executing it.   Seller is a duly formed and validly existing corporation of the Commonwealth of Pennsylvania.   The parties executing this Agreement represent that they have full power and authority to execute same in their respective capacities and that no further signature or approvals are required.   The parties hereto do hereby intend to be legally bound.

      7.2    Notice of Violations.   Five (5) days after the Agreement Date, Seller shall immediately provide copies of all Notices of Violations in connection with the Property, including but not limited to, notices from any governmental or other public authority that have been served upon the Seller, or anyone on the Seller's behalf, relating to violations of any applicable building, safety, fire or other ordinances.

      7.3    Tenant Leases; Contracts.   All Leases currently in place at the Property at the time of the signing of this Agreement shall remain in place.   Within five (5) days of the execution of this Agreement, Seller shall provide to Buyer copies of all existing Leases and Contracts.

      7.3.1    Seller also agrees that there are no construction, management, leasing, service, equipment, supply, maintenance or concession agreements (oral or written, formal or informal) with respect to or affecting all or any portion of the Property that have been entered into by Seller that that will survive Closing.

      7.4    Litigation.   There is no action, suit or proceeding pending or, to the knowledge of Seller, threatened against or affecting all or any portion of the Premises, or relating to or arising out of the ownership, leasing, management or operation of all or any portion of the Premises in any court or before or by any federal, state, county or municipal department, commission, board, bureau or agency or other governmental instrumentality, whether or not covered by insurance, including but not limited to proceedings for or involving collections, evictions, condemnation, eminent domain actions, alleged building code or zoning violations, personal injuries or property damage.   In the event any proceeding of the character described in this paragraph is initiated prior to Closing, Seller shall promptly advise Buyer thereof in writing.

      7.5    Environmental Matters; Environmental Indemnification.   Buyer hereby acknowledges receipt of a Phase I Report prepared by Pennoni & Associates Engineers, and dated April 13, 2011.   In addition to said report, Seller shall provide Buyer with copies of any and all additional correspondence, reports and data in connection with the environmental condition of the Premises known to Seller (hereinafter referred to as the "Environmental Information") within five (5) days of the Agreement Date.   Seller covenants, represents and

warrants that to the best of Seller's knowledge no polluting, toxic or hazardous substances were used, generated, treated, stored, released, discharged or disposed of by the businesses conducted on the Property by the Seller or, to the best of Seller's knowledge, by others, at any time.  No notification of release of a "hazardous substance" or "hazardous waste" as such terms are defined in and pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601 et seq., ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., or the federal Clean Water Act (33 U.S.C. Section 1251 et seq.), or any state or local environmental law, regulation or ordinance has been received by Seller and, to the best of Seller's knowledge, none has been filed as to the Property, and the Property is not listed or formally proposed for listing on the National Priority List promulgated pursuant to CERCLA or on any state list of hazardous substance sites requiring investigation or clean-up.  To the best of Seller's knowledge, no PCB-contaminated, friable asbestos or formaldehyde-based insulation items are present at the Property.  To the best of Seller's knowledge, no activities or occurrences are taking place or have taken place at the Property which might give rise to any basis for any of the foregoing.

7.5.1   Seller shall indemnify and hold harmless Buyer from any and all expenses, claims, actions, liabilities, damages, penalties and fines, directly arising from the existence, clean-up, remediation, and/or removal of any environmental contamination identified by the Environmental Information. ~~This shall survive the Closing:~~

7.5.2   In the event that Buyer is not reasonably satisfied with the environmental condition of the Property, then Buyer may terminate this Agreement whereupon the deposit shall be returned to Buyer.

7.6   Increased Real Estate Taxes.  Seller has received no notice of future increased real estate taxes and/or assessments affecting the Property.

7.8   No Foreign Person.  Seller is not a "foreign person" within the meaning of Section 1445 of the United States Internal Revenue Code, as amended, or its regulations.

7.9   Indemnification.  From and after the Closing Date, Seller shall indemnify and hold Buyer harmless from and against all liabilities, obligations, deficiencies, judgments, demands, assessments, losses, damages, costs, taxes and expenses (including reasonable attorneys' fees and disbursements) which shall be actually sustained by Buyer by reason of a misrepresentation or breach of any representation or warranty made by Seller contained in this Section 7.  Amounts owing under this Section 7 shall be paid promptly upon a demand for indemnification containing in reasonable detail the facts giving rise to such liability.  Following indemnification as provided for hereunder, Seller shall be subrogated to all rights of Buyer with respect to the matter for which indemnification is made.

8.   Covenants, Representations and Warranties of Buyer.  Buyer covenants, represents and warrants to Seller as follows:

8.1.   No Breach.  The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof will

*If an environmental issue arises before Closing, Seller may rectify before scheduled closing or either party may declare agreement null and void.  No liability shall survive closing.*

not result in a breach of any of the terms or provisions of, or constitute a default under, any agreement of Buyer or any instrument to which Buyer is a party or by which Buyer is bound, or any judgment, decree or order of any court or governmental body, or any applicable law, rule or regulation.

8.2     Financial Ability to Close.   Buyer has the financial ability to consummate the transactions contemplated hereunder.

9.     `Conditions Precedent to Closing.   Buyer's obligation to close hereunder shall be expressly conditioned upon the occurrence or fulfillment of each of the following conditions on or prior to the Closing Date:

9.1 `   All of the representations and warranties by Seller set forth in this Agreement shall be true and correct at and as of the Closing Date in all respects.

9.2     No representation or warranty by Seller contained in this Agreement or in any Exhibit attached hereto shall contain any untrue statement or shall omit a material fact necessary to make the statement of fact therein recited not misleading.

9.3     Seller shall have performed all covenants, agreements and conditions required by this Agreement to be performed by Seller prior to the Closing Date.

9.4     Buyer shall not have earlier terminated this Agreement in accordance with the terms hereof.

9.5     Seller's obligation to close hereunder shall be expressly conditioned upon Buyer's delivery of the balance of the Purchase Price due at closing.

9.6     Seller has not become aware of any new violations being issues against the Property by the Department of Licenses and Inspections or any other City agency.

10.    Closing; Deliveries.   The Closing under this Agreement (the "Closing") shall be held on or before Friday, January 29, 2016, at the offices of Zarwin Baum DeVito Kaplan Schaer & Toddy, P.C., 1818 Market Street, Philadelphia, PA 19103, unless another time, date or place is agreed to in writing by both Seller and Buyer.

10.1.   Deliveries.  At Closing, Seller shall deliver to Buyer the following:

10.1.1. A special warranty deed to the Property duly executed and acknowledged by Seller and in proper form for recording, conveying fee simple title to the Property to Buyer.

10.1.2. Such affidavits as the Title Insurer shall reasonably require prior to Closing.

10.1.3. Keys to all locks of the Premises in Seller's possession.

10.1.4. All other instruments and documents required on the part of Seller to effectuate this Agreement and the transactions contemplated thereby.

11. Taxes. Utilities. Taxes, municipal liens and betterments, and utilities shall be apportioned pro rata as of date of settlement.   It is understood that the conveyance fees or taxes customarily paid equally by Seller and Buyer in the State of Pennsylvania shall be paid equally by Seller and Buyer and that Buyer shall pay the cost of recording the Deed, the title search, title insurance and any other conveyance fees or taxes customarily paid by purchasers in Pennsylvania.   If any errors or omissions are found to have occurred in any calculations or figures used in the settlement statement (or would have been included if not for any such error or omission) and notice is given within two (2) months of the date of the delivery of the deed to the party to be charged, then such party agrees to make a payment to correct the error or omission. This provision shall survive delivery of the deed.

12. Damage or Destruction of Premises. In the event of any loss or damage to the Premises caused by fire, or loss commonly covered by the extended coverage endorsement of reputable insurance companies between the date of this agreement and the time of settlement then Seller shall assign the right to the proceeds of any insurance to Buyer.  In the event that said proceeds shall be insufficient to repair or restore the Premises then Buyer may elect to immediately terminate this Agreement by written notice to Seller upon the date Buyer has received information from Seller on the amount of the proceeds to be assigned.

13. Notice.  All notices required or to be given hereunder shall be in writing and deemed duly given when mailed by established, overnight, commercial courier delivery with charges pre-paid or duly charged by the sender or by certified mail, return receipt requested, postage prepaid, addressed as follows:

If to Seller:

Telwell, Inc.
P.O. Box 42859
Philadelphia, PA 19101

With a copy to:

If to Buyer:

Micheline De Berardine
41 Pheasant Hill Road
Weston, CT 06883

With a copy to:

Darwin R. Beauvais, Esquire
Zarwin Baum DeVito
Kaplan Schaer & Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
(267) 765-9653 Direct
(267) 765-9664 Facsimile
drbeauvais@zarwin.com

14. Assignability. Buyer may assign or transfer any portion or all of its rights or obligations under this Agreement to any other individual, entity or other person; and upon any such assignment such assignee shall be deemed to be the Buyer hereunder for all purposes hereof and have all the rights of Buyer hereunder (including, without limitation, the right of further assignment), and the assignor shall remain liable hereunder.

15. Intentionally Omitted.

16. Brokerage. Delphi Property Group and Corporate Realty Partners & Co. Inc. ("Listing Agent") are acknowledged as the Brokers in the transaction and will be paid a Brokerage Commission at the time of settlement. Pursuant to the terms of the Exclusive Representation Agreement that the Listing Agent has represented was signed by the Seller and the Listing Agent, the Brokerage Commission shall be paid by the Seller in the amount of six (6%) percent of the Purchase Price to be shared equally by the Brokers. Seller shall provide Buyer with a copy of the Exclusive Representation Agreement within five (5) days of the signing of this Agreement. Buyer is not obligated to pay any of the Brokerage Commission. Each party represents that it has not dealt with any other broker or finder and that each will indemnify the other from any loss or damage sustained as a result of any claim by any broker or finder claiming through indemnifying party.

17. Governing Law; Parties in Interest. This Agreement shall be governed by the law of the Commonwealth of Pennsylvania, and shall bind and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, assigns and personal representatives.

18. Computation of Time. In computing any period of time pursuant to this Agreement, the day of the act or event from which the designated period of time begins to run will not be included. The last day of the period so computed will be included, unless it is a Saturday, Sunday or legal holiday in Pennsylvania, in which event the period runs until the end of the next day which is not a Saturday, Sunday or such legal holiday.

19. Recording. This Agreement shall not be recorded in any place of public record, and if Buyer shall record this Agreement or cause or permit the same to be recorded without Seller's express written consent thereto, Seller may, at Seller's option, elect to treat such act as a breach of this Agreement and cause the same to be removed from record at Buyer's expense.

20. Time of the Essence. All times, wherever specified herein for the performance by Seller or Buyer of their respective obligations hereunder, are of the essence of this Agreement.

21. Headings. The headings preceding the text of the paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

22.   Counterparts.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

23.   Entire Agreement; Amendments.   This Agreement merges all prior negotiations and understandings between the parties and constitutes their entire contract which is binding upon the Buyer and the heirs, executors, administrators, successors and assigns of Buyer when executed by Buyer, and is binding upon Seller, its successors and assigns, only when executed by an official of Seller, regardless of any written or verbal representation of any agent, manager or other employee of Seller to the contrary.  This Agreement may not be changed orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent or discharge is sought.

24.   Applicable Law And Venue.  This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. The Parties agree that venue under this Agreement shall be in the County of Philadelphia, Commonwealth of Pennsylvania.

*[The Rest of This Page Is Intentionally Left Blank]*

IN WITNESS WHEREOF the parties hereto have caused these presents first to be duly executed the day and year hereinabove written.

WITNESSES:

_____

_____

SELLER:
Telwell, Inc.

By _____ Matthew Crue, President

BUYER:
Micheline De Berardine

Purchase of 1209-15 Vine Street

# EXHIBIT "B"

**From:** micheline de berardine <deberardine@gmail.com>
**Date:** December 11, 2015 at 2:28:04 PM EST
**To:** Jamie Weiner <Jamie@DelphiPG.com>
**Cc:** James De Berardine <jdeberardine@icloud.com>, Heather Lucas <heather@mphc.ca>
**Subject: Fwd: 1209 Vine Street - PAFA15-5291**

Jamie - we will need to revise this to reflect our agreement.

thanks, Micheline


Begin forwarded message:


**From:** Sandy Wildon <sandywildon@gmail.com>
**Subject: Re: 1209 Vine Street - PAFA15-5291**
**Date:** December 11, 2015 at 11:19:48 AM EST
**To:** micheline de berardine <deberardine@gmail.com>
**Cc:** Jamie Weiner <Jamie@delphipg.com>, Art Keegan <aikeeg@yahoo.com>, James De Berardine <jdeberardine@icloud.com>, Heather Lucas <heather@mphc.ca>, Sandy Wildon <swildon@lsutitle.com>

Preliminary settlement sheet is attached, thank you.



# LAND SERVICES USA, INC.

1835 Market Street, Suite 420, Philadelphia, PA  19103  (215) 563-5458

| | | | Closing Date | February 1, 2016 |
|---|---|---|---|---|
| File No. | PAFA15-5291 | | Title Policy Amount | |
| Seller | Telwell Inc | | $6,000,000.00 | |
| Buyer | Micheline De Berardine | | | |
| Lender | N/A | | | |
| Premises | 1209-15 Vine Street, Philadelphia, PA | | | |

## CREDITS TO SELLER

| Consideration | | | | | $6,000,000.00 | |
|---|---|---|---|---|---|---|
| RE City Taxes 2015 | | $55.99 | per day x | 334 days | $18,700.65 | |
| | | | | TOTAL | | $6,018,700.65 |

## CREDITS TO BUYER

| | | | | | $0.00 |
|---|---|---|---|---|---|
| | | NET CONSIDERATION | | | $6,018,700.65 |

| SELLER DISBURSEMENTS | | | BUYER DISBURSEMENTS | | |
|---|---|---|---|---|---|
| | | | NET CONSIDERATION (from above) | | $6,018,700.65 |
| Loan Payoff | To: TD Bank, N.A | TBD | TITLE COMPANY CHARGES | | |
| | | | Premium Owner's Policy (simultaneous issue) | | $15,900.00 |
| | | | Endorsements | | |
| Broker Fee | | | | | |
| | | | Premium Lender's Policy (Simultaneous Issue) | | |
| | | | Endorsements | | |
| | | | Lender Charges | | |
| OTHER CHARGES | | | OTHER CHARGES | | |
| Gas Charges | To: PGW | $1,852.40 | Broker Fee | To: Delphi Property Group, LLC | $180,000.00 |
| Water Charges | To: WRB | $780.00 | | | |
| GOVERNMENT FEES | | | GOVERNMENT FEES | | |
| Recording Fees | | | Recording Fees | | $1,000.00 |
| Transfer Tax | | $120,000.00 | Transfer Tax | | $120,000.00 |
| TOTAL SELLER DISBURSEMENTS | | $122,632.40 | TOTAL BUYER DISBURSEMENTS | | $6,335,600.65 |

## RECONCILIATION

| NET CONSIDERATION (from above) | $6,018,700.65 | TOTAL BUYER DISBURSEMENTS | $6,335,600.65 |
|---|---|---|---|
| | | LESS TOTAL DEPOSITS (see below) | $0.00 |
| Total | $6,018,700.65 | BALANCE DUE or (Overdeposit to Buyer) | $6,335,600.65 |
| Less: Total Disbursement | ($122,632.40) | DEPOSITS | |
| Net to Seller | $5,896,068.25 | Earnest Money Deposit | |
| | | Deposit from Lender | |
| | | Deposit from Borrower | |
| | | TOTAL DEPOSITS | $0.00 |

The above settlement is examined and approved, and copy received, in consideration of which Land Services USA, Inc. is directed and authorized to make distribution and payments in accordance herewith. Any funds held for disposition of exceptions or the protection of the Company will be held subject to the terms and conditions of an escrow agreement entered into between the parties and Land Services USA, Inc.

SIGNATURES ON FOLLOWING PAGE

DRAFT

# LAND SERVICES USA, INC.

1835 Market Street, Suite 420, Philadelphia, PA 19103

| File No. | PAFA15-5291 | | Closing Date: | February 1, 2015 |
| Seller | Telwell Inc | | | |
| Buyer | Micheline De Berardine | | | |
| Lender | N/A | | | |
| Premises | 1209-15 Vine Street, Philadelphia, PA | | | |

**SIGNATURE PAGE**

Seller                                                          Buyer

Telwell Inc                                              Micheline De Berardine

By: _____                  By: _____
   a                                                             a

By: _____                  By: _____
   Name:                                                   Name:
   Title:                                                      Title:

TITLE COMPANY

Land Services USA, Inc.

By: _____