IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELINE DE BERARDINE, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMIE B. WEINER, et al. | : | NO. 16-864 |

MEMORANDUM

Dalzell, J.                                                    July 26, 2016

## I.      Introduction

We consider here defendants Jamie B. Weiner ("Weiner") and Delphi Property Group,

LLC's ("Delphi") motion to dismiss the amended complaint. Plaintiffs Micheline De Berardine

("De Berardine") and Meritis Group LLC ("Meritis") bring claims for breach of fiduciary duty,

fraud, and breach of contract resulting from a real estate transaction. We have jurisdiction

pursuant to 28 U.S.C. § 1332. We will grant defendants' motion to dismiss because

Pennsylvania's parol evidence rule and gist of the action doctrine bar plaintiffs' claims.


## II.     Standard of Review

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of proving that the

plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges

v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive such a motion, the complaint must

contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). A claim is plausible when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556

U.S. at 678.

We need not accept as true the complaint's legal conclusions, and threadbare recitals of the elements of a cause of action will not suffice. Id. Nor are we bound to accept as true legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555. Our Court of Appeals has laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record, and any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the first amended complaint.

### III.   **Factual Background**

In the fall of 2015, De Berardine and her son, James De Berardine ("James"), began searching for a commercial property to purchase in Center City, Philadelphia. Am. Compl. ¶ 8. Weiner, a licensed commercial real estate broker, in his capacity as Delphi's broker, began assisting them with their search. Id. at ¶ 9. Weiner showed the De Berardines the real property located at 1209 Vine Street in Philadelphia (the "Property"), a five-story office building listed for $5.5 million and then owned by Telwell, Inc. ("Telwell"). Id. at ¶¶ 10-11. De Berardine, through

Weiner, made a series of offers to Telwell by way of term sheets, starting with an offer of $3.25 million. Id. at ¶ 12. On November 2, 2015, Weiner called James to relay that Telwell would sell the building for $6 million. Id. at ¶ 13. The offer was good for that day only, and Telwell would not permit any changes to the form of the offer. Id. Weiner's commission on this deal would be 3% of the sale price, or $180,000.00. Id. at ¶ 14.

James was disappointed with the price escalation and told Weiner that Weiner had not properly represented him and De Berardine during the negotiations. Id. at ¶ 15. Weiner told the De Berardines that they would have to walk away from the deal. Id. at ¶ 16. James told Weiner that they would accept Telwell's offer only if Weiner reduced his brokerage fee. Id. at ¶ 17. Weiner told James that he would cap his commission at $112,000.00 and give the De Berardines the remaining balance of the $180,000.00 he would receive at the closing. Id. at ¶ 18. After conferring with De Berardine, James asked Weiner to cap his commission at $90,000.00. Id. at ¶ 19. Weiner said he would cap it at $100,000.00. Id. at ¶ 20. James and De Berardine accepted Weiner's offer and told him that the deal would not have happened without him "stepping up." Id. at ¶ 21. The terms of Weiner's commission agreement were not memorialized in writing. Id. at ¶ 22. The logistics of how De Berardine would receive the $80,000.00 were never discussed. Id. at ¶ 23.

Within an hour of Weiner agreeing to cap his commission, De Berardine signed the Agreement of Sale for the Property for the purchase price of $6 million. Id. at ¶ 24. De Berardine entered into the Agreement of Sale for herself and the benefit of her future company, Meritis, based upon Weiner's representation that he would remit $80,000.00 of his commission to De Berardine or her assignee. Id. at ¶ 25.  That same day, Weiner delivered the signed Agreement of

Sale to Telwell's president, Matthew Crane, who signed it on Telwell's behalf. Id. at ¶ 26. Weiner told Crane that he had gotten beaten up on his commission. Id. at ¶ 27.

On December 10, 2015, Meritis was incorporated in the State of Delaware as a limited liability company, funded by De Berardine, with De Berardine as its sole manager and member. Id. at ¶ 28. The next day, De Berardine emailed Weiner to tell him that the circulated draft settlement sheet needed to be revised to reflect their agreement regarding Weiner's commission. Id. at ¶ 29. Weiner ignored the email. Id. at ¶ 30. In January of 2016, as the closing date approached, James repeatedly called Weiner to clarify how the settlement sheet should be prepared in order to reflect Weiner's new commission and how Weiner's closing credit to De Berardine or Meritis would be funded. Id. at ¶ 31. Weiner also ignored these calls. Id. at ¶ 32. On January 26, 2016, three days before the scheduled closing date and after the due diligence period ended, Weiner responded to the De Berardines and told them that he was not going to abide by his oral agreement to cap his brokerage fee and insisted there was no formal, signed documentation supporting that agreement. Id. at ¶ 33. On January 29, 2016, Meritis, as De Berardine's assignee, purchased the Property from Telwell for $6 million. Id. at ¶ 35. Weiner received his $180,000.00 commission and did not give any money to De Berardine or Meritis at the closing. Id. at ¶ 36.

Plaintiffs bring three claims against defendants. In Count I, plaintiffs bring a breach of fiduciary duties claim against defendants for failing to abide by the commission agreement, failing to clearly and in writing articulate the terms of the commission agreement, misrepresenting the terms of the defendants' commission and closing credit, and repeatedly failing to respond to plaintiffs' requests for confirmation of the agreement until after the due diligence period. Id. at ¶ 40. Plaintiffs claim that they entered into the Agreement of Sale and

closed on the Property because of defendants' misrepresentations as they had to go forward with the sale or risk losing their $300,000.00 deposit. Id. at ¶¶ 41-42. In Count II, plaintiffs bring a fraud claim against defendants, alleging that defendants failed to disclose material information relating to their brokerage fee and plaintiffs' related closing credit to induce plaintiffs to buy the Property. Id. at ¶¶ 46-48. In Count III, plaintiffs allege that defendants breached the parties' verbal agreement of November 2, 2015 to cap Weiner's commission at $100,000.00 and remit $80,000.00 to plaintiffs at closing. Id. at ¶¶ 52-53.

## IV.   **Discussion**

Weiner and Delphi move to dismiss the entire amended complaint, arguing that: (1) plaintiffs' claims based on a purported pre-contractual verbal agreement are precluded by Pennsylvania's parol evidence rule, (2) Pennsylvania's gist of the action test prohibits plaintiffs from pursuing their tort claims for breach of fiduciary duty and fraud, (3) Pennsylvania's economic loss doctrine precludes plaintiffs' tort claims, (4) plaintiffs' alleged facts do not plausibly establish proximate cause, (5) Delphi, not Weiner, is the appropriate defendant, and (6) plaintiffs' demand for punitive damages must be dismissed to the extent their tort claims are dismissed. Defs.' Mot. to Dismiss ("MTD") Mem. at 1-3. Plaintiffs oppose the motion to dismiss.

Defendants argue that plaintiffs' claims are based on a purported pre-contractual oral agreement that is precluded by Pennsylvania's parol evidence rule. Plaintiffs respond that the oral contract with defendants is a separate agreement apart from the Agreement of Sale, and defendants cannot invoke the parol evidence rule because they are not third-party beneficiaries of the Agreement of Sale. Pls.' Resp. in Opp. Mem. at 6, 8.

Where prior fraudulent oral representations are alleged regarding a subject that is specifically dealt with in a written contract, the party alleging such representations must, under the parol evidence rule, also aver that the representations were fraudulently or by accident or mistake omitted from the integrated written contract. HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278, 1279 (Pa. 1995). See also Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436-37 (Pa. 2004) (explaining the parol evidence rule). This rule bars consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the written contract. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996) (parsing the holding from HCB Contractors). The parol evidence rule forbids admitting evidence of prior representations to fully integrated written agreements, even for claims of fraudulent inducement. 1726 Cherry Street P'ship by 1726 Cherry Street Corp. v. Bell Atl. Props., Inc., 653 A.2d 663, 670 (Pa. Super. Ct. 1995). "Fraud in the inducement . . . does not involve terms omitted from an agreement, but rather allegations of oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement." Dayhoff Inc., 86 F.3d at 1300 (summarizing Pennsylvania law on the parol evidence rule).

Pennsylvania's parol evidence rule "bars claims of fraud in the inducement and only allows claims of fraud in the execution." Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 592 (E.D. Pa. 1999). "[A] party may assert that provisions of a written agreement were omitted by fraud, accident, or mistake, but not that it was induced to enter a contract by fraudulent misrepresentation." Id. "For the Pennsylvania parol evidence rule to bar a claim for fraudulent inducement, the contract must be written, unambiguous, and fully integrated." Id. at 594-95.

We decide, as a matter of law, whether a written agreement is the "final and complete expression of the parties' agreement." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 995 (3d Cir. 1987). We examine the writing and compare it "with the alleged oral agreement [andif] the writing and the oral agreement relate to the same subject matter and . . . if the parties, situated as were the contracting parties, would normally have included both in one agreement, then the subject of the alleged oral agreement must be considered as having been covered by the writing." Id.

The Agreement of Sale provided in Section 16:

> Delphi Property Group and Corporate Realty Partners & Co. Inc. ("Listing Agent") are acknowledged as the Brokers in the transaction and will be paid a Brokerage Commission at the time of settlement. Pursuant to the terms of the Exclusive Representation Agreement that the Listing Agent has represented was signed by the Seller and the Listing Agent, the Brokerage Commission shall be paid by the Seller in the amount of six (6%) percent of the Purchase Price to be shared equally by the Brokers…Buyer is not obligated to pay any of the Brokerage Commission…

Original Compl. Ex. A at unnumbered p. 7.[1]

The Agreement of Sale is a written, unambiguous and fully integrated document. See id. at unnumbered p. 8 ("This Agreement merges all prior negotiations and understandings between the parties and constitutes their entire contract…This Agreement may not be changed orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent or discharge is sought.").

---

[1] Plaintiffs attached the Agreement of Sale as an exhibit to their original complaint. Although they did not re-attach that exhibit to their amended complaint, they make extensive reference to it therein, and their claims are based upon it. The parties do not dispute the Agreement of Sale's authenticity. We therefore take judicial notice of the document as part of the pleadings.

The Agreement of Sale relates primarily to the sale of the Property from Telwell to plaintiffs, but it also specifically provides for the payment of a commission by the seller, Telwell, to the listing agents -- including Delphi. The alleged oral agreement pertains to Weiner's promise to accept less than 3% of the sale price as his commission or to give $80,000.00 of his commission to plaintiffs. These two agreements relate to the same subject matter -- namely, the commission, and so the alleged oral agreement must be considered to be covered by the Agreement of Sale.

In Pennsylvania, a party becomes a third-party beneficiary only when both parties to the contract express an intention to benefit the third party in the contract itself. Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 401 (E.D. Pa. 2002). The Agreement of Sale contains an express provision that Delphi is one of the brokers in the transaction and will be paid a brokerage commission at the time of settlement, and so Delphi is clearly a third-party beneficiary to the contract. See also Johnson v. Stewart, 90 A. 349, 349 (Pa. 1914) (explaining that a purported stranger to a contract may invoke the parol evidence rule if he can show that the contract was entered into for his benefit and he therefore has rights under it).

Plaintiffs have brought a straightforward claim of fraud in the inducement, to wit: if Weiner had not made the oral representation that he would cap his commission, plaintiffs would not have signed the Agreement of Sale. But Pennsylvania's parol evidence rule applies in this case because the Agreement of Sale and the alleged oral agreement cover the same subject matter, the Agreement of Sale is a written, final, and fully integrated contract, and defendants, as third-party beneficiaries of the Agreement of Sale, are permitted to invoke the parol evidence rule against plaintiffs, who were parties to the Agreement of Sale. When a sophisticated party intends to rely upon a centrally important representation in connection with a multimillion dollar

commercial real estate transaction, that party must insist the representation be contained in the integrated written agreement. See 1726 Cherry Street P'ship, 653 A.2d at 670 (explaining that in those circumstances, such a party is barred from eliciting parol evidence that it was fraudulently induced into entering the contract). See also Rock v. Voshell, 397 F. Supp. 2d 616, 626 (E.D. Pa. 2005) (holding that where an Agreement of Sale contained an integration clause and the parol evidence rule barred the alleged misrepresentations, the court would grant the motion to dismiss the breach of contract claims); Bray v. Dewese, No. 07-4011, 2008 WL 623824, *2 (E.D. Pa. Mar. 6, 2008) (Kauffman, J.) (unreported) (citing cases for the proposition that parol evidence is precluded where there is a claim of fraudulent inducement and the contract at issue contains an integration clause). Because we find that Pennsylvania's parol evidence rule applies here, we will dismiss Count III of the amended complaint for breach of contract.

Finally, we find that Pennsylvania's gist of the action doctrine bars plaintiffs' tort claims in Counts I and II. The gist of the action doctrine precludes a plaintiff from recasting a breach of contract claim as a tort claim. See Williams v. Hilton Grp. PLC, 93 F. App'x 384, 386 (3d Cir. 2004) (non-precedential) (explaining the doctrine and predicting that the Pennsylvania Supreme Court would adopt the doctrine as set forth in the Pennsylvania Superior Court's decisions). The gist of the action doctrine bars tort claims (1) arising solely from a contract between the parties, (2) where the duties allegedly breached were created in the contract itself, (3) where the liability stems from a contract, and (4) where the tort claim essentially duplicates a breach of contract claim or the success of the tort claim depends wholly upon the contract's terms. eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 19-20 (Pa. Super. Ct. 2002) (explaining further that the doctrine applies to fraud claims as well). Here, the gist of the action clearly lies in the breach of

contract claim, and plaintiffs are precluded from recasting that claim as torts in Counts I and II. We will therefore dismiss Counts I and II of the amended complaint.

**V.**    **Conclusion**

Because plaintiffs' claims are barred by Pennsylvania's parol evidence rule and gist of the action doctrine, we will dismiss plaintiffs' amended complaint with prejudice. An appropriate Order follows.

BY THE COURT:


   /s/ Stewart Dalzell, J.
Stewart Dalzell, J.

10